# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRENDA LARAN CROWE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action Number |
| | ) | **2:18-cv-01519-AKK** |
| **vs.** | ) | |
| | ) | |
| **SYNTHES SPINE, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Brenda Laran Crowe filed this products liability action against the Synthes Defendants[1] and Paul Blaszyk in the Circuit Court of Jefferson County, Alabama. Doc. 1-1. Crowe alleges that she suffered severe injuries after the tip of a Thoracic Pedicle Probe designed, manufactured, and sold by the Synthes Defendants broke and lodged in her spine during back surgery. Blaszyk, a sales consultant employed by the Synthes Defendants, was present during the surgery and consulted with Crowe's surgeon regarding the complication. *Id.* at 9-10. As a result, Crowe pleaded claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and for failure to warn, negligence, and fraudulent concealment against Blaszyk individually. *Id.* at 13-23.

---

[1] The Synthes Defendants are Synthes Spine, Inc.; DePuy Synthes Products, Inc.; DePuy Synthes Sales, Inc. d/b/a DePuy Synthes Spine; Synthes USA, Inc.; and Synthes USA Products, LLC.

The Synthes Defendants removed this action to this court, asserting that jurisdiction exists pursuant to 28 U.S.C. § 1332(a) because Crowe fraudulently joined Blaszyk to destroy diversity jurisdiction. Doc. 1. This action is before the court on Blaszyk's motion to dismiss, doc. 6, and Crowe's motion to remand, doc. 9. Because the Synthes Defendants have not established that no reasonable possibility exists that Crowe can establish a cause of action against Blaszyk, Crowe's motion to remand is due to be granted.

## I.    STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction, with the power to hear only cases authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). By federal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A party seeking removal bears the burden of establishing that jurisdictional requirements are met. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1207 (11th Cir. 2007). "[F]ederal courts are directed to construe removal statutes strictly . . . . [A]ll doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Synthes Defendants designed, manufactured, and sold the MATRIX Spine System, a pedicle screw spinal fixation system, which includes the Thoracic Pedicle Probe.  Doc. 1-1 at 8.  Crowe's neurosurgeon utilized the MATRIX system during Crowe's surgery, and Blaszyk was present for most of the seven-hour surgery.  *Id.* at 9-10.  During the course of the surgery, 30 millimeters of the distal end of the Thoracic Pedicle Probe broke off in Crowe's left vertebral pedicle at L5.  *Id.* at 10.  After unsuccessful attempts to remove the embedded tip of the Pedicle Probe, Crowe's surgeon had to stop the procedure to consult with Blaszyk, who then contacted a DePuy Synthes product manager.  *Id.*  The complication caused a two-hour delay and forced Crowe's surgeon to fix Crowe's spine from L3 to S1 rather than from L5 to S1 as planned.  *Id.* at 10-11.  Crowe contends that she suffers from extreme pain and physical impairments as a result, and will require future surgeries to remove the portion of the probe that remains embedded in her spine.  *Id.* at 13.

Crowe filed this lawsuit in state court against the Synthes Defendants and Blaszyk.  Doc. 1-1.  As filed, complete diversity of citizenship does not exist because both Blaszyk and Crowe are Alabama citizens.  *Id.* at 5.  At issue here is the Synthes Defendants' contention that Crowe purportedly fraudulently joined Blaszyk in this action to defeat diversity jurisdiction.  Doc. 1.

## III. ANALYSIS

To prove fraudulent joinder, a defendant must show by clear and convincing evidence that "there is no possibility the plaintiff can establish a cause of action against the resident defendant . . . ." *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).[2]  This burden "is a 'heavy one,'" and the court must construe the facts and "resolve any uncertainties about state substantive law in favor of the plaintiff."  *Crowe*, 113 F.3d at 1538 (citations omitted).  "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) (quotation and emphasis in original omitted).

"When considering a motion for remand [based on fraudulent joinder], federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.  If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court *must* find that joinder was proper and remand the case to state court."  *Crowe*, 113 F.3d at 1538 (quotation omitted) (emphasis added).  "The plaintiff need not have a winning case against the

---

[2]  A defendant may also prove fraudulent joinder by showing "the plaintiff has fraudulently pled jurisdiction facts to bring the resident defendant into state court." *Henderson*, 454 F.3d at 1281 (quotation omitted).

allegedly fraudulent defendant; [s]he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (emphasis in original). But, "[t]he potential for legal liability 'must be reasonable, not merely theoretical.'" *Legg*, 428 F.3d at 1325 n.5 (quotation omitted).

As stated previously, Crowe asserts claims against Blaszyk under the AEMLD, and for negligence, failure to warn, and fraudulent concealment. Doc. 1-1 at 13-23. "The AEMLD establishes a cause of action against 'a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, thereby constituting negligence as a matter of law.'" *Southern*, v. *Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1215 (N.D. Ala. 2006) (citing *Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 132 (Ala. 1976)) (alterations in original omitted). The Synthes Defendants argue that because a product representative or sales consultant is not a "seller" for purposes of the AEMLD, there is no reasonable possibility that Crowe can establish a claim against Blaszyk. Docs. 1 at 6; 11 at 3-6.

There is no bright-line rule that product representatives and sales consultants are not "sellers" under the AEMLD. *See Southern*, 471 F. Supp. 2d at 1215-16. Rather, courts look to the specific facts of a case, including a consultant's involvement with the plaintiff, her physician, and the product at issue, to determine

if a consultant is a seller for purposes of the AEMLD. *See id.* at 1215-17; *Culpepper v. Stryker Corporation*, 968 F. Supp. 2d 1144, 1152-54 (M.D. Ala. 2013); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *6-7 (M.D. Ala. Dec. 19, 2005). In this case, to prove that Blaszyk is not a seller, the Synthes Defendants provide a declaration from Blaszyk, which states in part that he has "no personal knowledge that any of the marketing" for the MATRIX system was incorrect or misleading and no "specialized knowledge that was unavailable to [Crowe's] surgeon," that he "was not aware of any alleged reported problems of tip breakage or embedding," and that he has "never made any representations or statements or provided any express or implied warranties . . . about whether the [MATRIX system] was suitable for [Crowe]." Doc. 1-2 at 3. Notably, Blaszyk does not dispute that he was present during almost all of Crowe's surgery or that her surgeon consulted with him when complications arose during the surgery. *See id.* Consequently, the facts of this case are materially different from those the Synthes Defendants cite to support their argument that Crowe cannot be considered a seller under the AEMLD. *See Culpepper*, 968 F. Supp. 2d at 1149 (noting that the product sales representative attested that "he has never participated in a surgical procedure" at the hospital where the plaintiff had surgery and "has never spoken to [the plaintiff] or anyone who treated her"); *Southern*, 471 F. Supp. 2d at 1213 (noting that the product representatives either had never called on or had not

provided relevant information to the plaintiff's physician); and *Bloodsworth*, 2005 WL 3470337, at *7 (noting that the product representative attested that he "merely received orders and delivered [] products . . . to physicians"). Thus, because Blaszyk was involved with Crowe's surgery and conferred with Crowe's surgeon about the allegedly defective product, the cases the Synthes Defendants rely upon do not establish that Blaszyk cannot be considered a seller for purposes of the AEMLD, or that there is no reasonable possibility that Crowe can establish an AEMLD claim against Blaszyk.

Next, with respect to her negligence claims, Crowe alleges that "Blaszyk had a duty to act as a reasonable medical device sales consultant . . . and to provide [her] healthcare providers with important and material information regarding the MATRIX and specifically, the Thoracic Pedicle Probe [] including breakage and embedding problems, proper usage, and proper technique with regard to the Thoracic Pedicle Probe." Doc. 1-1 at 21. Although, as noted above, Blaszyk states that he does "not have any specialized knowledge that was unavailable to [Crowe's] surgeon" and that he "was not aware of any alleged reported problems of the tip breakage or embedding," Blaszyk provides no information about why he attended Crowe's surgery, or what information he provided to the surgeon when the surgeon conferred with him during the surgery. Doc. 1-2. On this record, the court cannot say there is no possibility that an Alabama court would find that

Blaszyk owed a duty to Crowe. Thus, the court finds that the Synthes Defendants have not shown that a reasonable possibility does not exist that Crowe can establish a negligence claim against Blaszyk.

## IV. CONCLUSION

The court is precluded from weighing the merits of Crowe's claims when ruling on her motion to remand. Instead, the court must determine only whether her claims are "arguable . . . under state law." *Crowe*, 113 F.3d at 1538. Based on the foregoing, the court finds that a reasonable possibility exists that an Alabama court would find that Crowe has established a claim for relief against Blaszyk. As a result, the defendants have failed to meet their heavy burden to prove fraudulent joinder. Therefore, this action is due to be remanded to the Circuit Court of Jefferson County, Alabama pursuant to 28 U.S.C. § 1447 for lack of subject matter jurisdiction, *see Florence*, 484 F.3d at 1298-99 ("We hold that, if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court *cannot* find that joinder of the resident defendant was fraudulent, and remand is *necessary*.") (emphasis added). A separate order will be entered.

**DONE** the 17th day of January, 2019.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE